# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **KWAME AJAMU, et. al,** | ) | **CASE NO. 1:15CV1320** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CITY OF CLEVELAND, et. al,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

The matter comes before the Court upon the Motion of Karen Lamendola (ECF DKT #63) for Summary Judgment on Plaintiffs' claims pursuant to Fed. R. Civ P. 56. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED, in part.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Kwame Ajamu and Wiley Bridgeman filed their original Complaint on July 2, 2015 against Frank Stoiker, as well as several other former detectives and the City of Cleveland, alleging constitutional violations by the detectives caused by the City's unconstitutional policies and lack of training. Plaintiffs filed their First Amended Complaint on August 10, 2016. On January 27, 2017, Defendant Karen Lamendola, Guardian ad Litem for Frank Stoiker, filed a Motion for Summary Judgment on all claims against him.

In 1975, Ricky Jackson, Kwame Ajamu and Wiley Bridgeman were arrested and imprisoned for the murder of Harold Franks. They were found guilty based on the testimony of

1

then-twelve-year-old Edward Vernon, who claimed to have witnessed the crime. Nearly forty years later, after many of the detectives involved in the case were deceased, Vernon recanted his testimony, claiming he had been coerced by Cleveland police officers into saying that he had witnessed the crime. The State of Ohio dismissed the charges against Plaintiffs and they filed suit against the City of Cleveland, several former detectives and the estates of several deceased detectives. The cases against the estates were dismissed, leaving only the claims against the City of Cleveland and former Detectives Frank Stoiker and Jerold Englehart. However, Stoiker has Alzheimer's-type Dementia and is represented by Guardian ad Litem Karen Lamendola.

On May 25, 1975, Vernon was taken to a police lineup by two detectives. The lineup was conducted by a third police officer. When asked if he recognized anyone in the lineup, Vernon said no. Vernon had previously identified Ricky Jackson and Wiley Bridgeman, who were both in the lineup. After the lineup, two detectives took Vernon to another room. Vernon later identified one of the detectives as Detective John Staimpel, but Vernon was unable to identify the other detective. Vernon says that Staimpel got angry, beat the table and yelled at Vernon for lying. Then Staimpel told Vernon that he would "fix this" and both detectives left the room for a while. When they returned, Staimpel gave Vernon a statement to sign, which said that Vernon recognized Jackson and Bridgeman in the lineup and that Vernon hadn't identified them because Vernon was afraid of them. Vernon never told those detectives that he was afraid and never told them any of the details of the crime.

In 1975, Frank Stoiker was partnered with John Staimpel in the Homicide Unit of the Cleveland Police Department. Stoiker and Staimpel were assigned to the Franks homicide investigation. Detectives Eugene Terpay and James Farmer were the lead detectives on the case

and Stoiker and Staimpel worked the second shift on the case. Vernon's only alleged interaction with Staimpel was on May 25, 1975, and Vernon never alleged that he met Detective Stoiker and did not recognize Stoiker's name or photograph. However, Stoiker signed a statement dated May 25, 1975, which was also signed by Staimpel and Vernon.[1] Dkt 82-31. This statement contained a series of questions that Vernon was supposedly asked, along with Vernon's answers. The statement covers both the details of the crime and the May 25 lineup.

Stoiker also signed a report dated May 25, 1975, in which Stoiker said that he and Staimpel picked up Vernon and another witness to review the lineup, where Vernon did not identify anyone in the lineup. Dkt. 82-25.[2] The report states that Vernon, outside the lineup room, identified Jackson and Bridgeman and told Stoiker that Vernon was afraid of the men in the lineup. Stoiker's name is on another report, dated May 28, 1975, which states that he and Staimpel consulted with "Police Prosecutor A. Johnson who issued papers charging the two arrested males..." Dkt. 82-34. This report is unsigned, but has Stoiker's name printed on it.

Plaintiffs filed suit alleging seven counts under 42 U.S.C. § 1983 against Defendant for withholding exculpatory evidence, fabrication of evidence, malicious prosecution, failure to intervene to prevent a constitutional violation, conspiracy to violate Plaintiffs' constitutional rights, supervisory liability improper lineup procedure and three state law claims for negligence, malicious prosecution and conspiracy. Defendant moves for summary judgment on all counts.

---

[1] Defendant argues that Lamendola was not able to authenticate Stoiker's signatures. However, as Lamendola also testified that the signature on the police report resembles Stoiker's, this creates an issue of fact for the jury to determine their authenticity.

[2] Defendant objects to this report as hearsay in her Reply Brief. However, this report would not be offered for the truth of the matter asserted, as Plaintiffs allege that the statements within are, in fact, false.

Plaintiffs argue that Stoiker's signatures show that he was present at the lineup and present when Detective Staimpel threatened Vernon. Plaintiffs argue that Stoiker left the room, created or helped create the false statement and forced Vernon to sign it. Defendant argues that there is insufficient evidence to place Stoiker in the room with Vernon after the lineup and, even if Stoiker were present, Stoiker did not fabricate or withhold any evidence. Defendant also argues that Stoiker is entitled to qualified immunity on all counts.

## LAW AND ANALYSIS

### I. Standard of Review for Summary Judgment

Summary judgment is proper if the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Striecher*, 434 F.3d 461, 464 (6th Cir. 2006). A dispute is genuine if it is based on facts on which a reasonable jury could find for the non-moving party. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). A fact is material if the resolution of the dispute might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To meet its burden, the moving party can either present evidence showing the lack of genuine dispute as to material facts, or it may show the absence of evidence to support the nonmoving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has met its burden, the nonmoving party cannot rest on its pleadings; rather, the nonmoving party must point to specific facts in the record that show that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 248-49; *Celotex Corp.*, 477 U.S. at 324.

No matter how sympathetic one may be to Plaintiffs' plight, the Court is still under an

obligation to apply the law to the evidence Plaintiffs submit. Neither time nor death abrogates Plaintiffs' obligation to support their claims.

## II. Standard for Qualified Immunity

Officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages unless they violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982). The Sixth Circuit, in determining whether an official is entitled to qualified immunity, applies a three-part test: 1) whether the plaintiff's constitutional right was violated; 2) whether that right was clearly established at the time such that a reasonable official would have understood that he was violating that right; and 3) whether the official's action was objectively unreasonable in light of the clearly established rights. *Sample v. Bailey*, 409 F.3d 689, 696-97 (6th Cir. 2005). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006). The legal right cannot be framed in general terms to encompass an expansive area of law. *Bills v. Aseltine*, 52 F.3d 596. 602 (6th Cir. 1995). However, the exact circumstances of the particular case need not have been previously held illegal for the right to be "clearly established," but the right must be clear in a particularized way to put the official on notice that his conduct is illegal. *See Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003); *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

To determine if a right is clearly established, the Court looks first to Supreme Court decisions, then decisions from the Sixth Circuit Court of Appeals, then to other courts within this circuit, and finally to decisions from other circuits. *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994). Decisions from other circuits must point unmistakably to the unconstitutionality of

the act and be so clearly foreshadowed by direct authority as to leave no doubt in a reasonable person's mind that the act is unconstitutional. *Gean v. Hattaway*, 330 F.3d 758, 767-78 (6th Cir. 2003).

Once the defense of qualified immunity has been raised, plaintiffs have the burden of demonstrating the defendant is not entitled to qualified immunity. *Rodriquez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

### III. Plaintiffs' § 1983 Claims Against Frank Stoiker Fail Because There is No Evidence Stoiker Committed Constitutional Violations.

A. <u>Fabrication of Evidence</u>

Plaintiffs allege that Stoiker fabricated evidence by coercing Vernon into signing a false statement and by submitting a false report to his superiors about the lineup. Defendant contends that Stoiker was not involved in any coercion and there is no evidence that he knowingly made any false statements.

The Sixth Circuit has held that "[a]n officer violates a person's constitutional rights when he knowingly fabricates evidence against them and a reasonable likelihood exists that the false evidence would have affected the jury's decision." *France v. Lucas*, 836 F.3d 612, 629 (6th Cir. 2016). Furthermore, in 1936, the Supreme Court held that prisoners' constitutional rights were violated when police officers coerced confessions used against them in trial. *Brown v. Mississippi*, 297 U.S. 278, 286 (1936).

Plaintiffs fail to show that Stoiker fabricated evidence by creating the written statement. Vernon could not identify Stoiker and did not allege that Stoiker engaged in any wrongdoing, or was even involved in the investigation. The only evidence that points to Stoiker's involvement are the signatures on the statement and the report. However, even if those are Stoiker's

6

signatures, Plaintiffs have not cited to any policy, practice, or procedure about the meaning or effect of signature. Therefore, the Court is left to speculate as to what the signature meant.

Even assuming that Stoiker fabricated the statement and report, he still did not commit a constitutional violation. The second requirement for a fabrication of evidence claim is that a reasonable likelihood exists that the false evidence influenced the jury's decision. It is clear that the statement and the report did not influence the jury's decision in the 1975 trials. Plaintiffs cite no evidence that Stoiker's report was ever even mentioned in any trial. Furthermore, while parties attempted to introduce the statement in both Bridgeman's and Ajamu's trials, it was objected to and kept out in both. Dkt 82-23 at J2035; Dkt. 82-24 at J3760. In the Jackson trial, Vernon was asked a series of questions about the statement. Dkt. 82-12 at J1014-16; J1029-39. The questions concerned inconsistencies between Vernon's testimony at trial and the statement, such as whether the victim was leaving the store or going into the store at the time of the murder. However, it is unclear whether the jury in the Jackson trial had the statement while they were deliberating.

In all three trials, there is not a reasonable likelihood that any false evidence that Stoiker may have created affected the jury's decision. Vernon's live testimony led to the conviction in all three trials. Vernon testified at the trial as to what he saw and Stoiker had no part in compelling any testimony at trial. In the Bridgeman and Ajamu trials, the statement was kept out by objections, so the jury did not even hear about its contents. In the Jackson trial, the statement was used by the defense to point out inconsistencies. Because of this, it appears that the jury convicted Jackson in spite of, rather than because of, the statement.

Because there is no evidence that Stoiker committed a constitutional violation, Plaintiffs'

7

claim of fabrication of evidence against Stoiker fails. Furthermore, because there is no evidence that Stoiker committed or knew of a constitutional violation, there is no evidence that Stoiker conspired to commit such a violation. Therefore, Plaintiffs' conspiracy claim also fails.

      B.      <u>Withholding Exculpatory Evidence</u>

Plaintiffs allege that Stoiker violated his *Brady* obligations to disclose exculpatory evidence by not disclosing how Vernon's signed statement was prepared.

In 1963, the Supreme Court held that the prosecutor has a constitutional obligation to disclose exculpatory evidence to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Defendant asserts that the Supreme Court did not extend this duty to police officers until 1995, while Plaintiffs argue that the Sixth Circuit held a police officer liable for failure to disclose exculpatory evidence in 1975. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *Hillard v. Williams*, 516 F.2d 1344, 1349-50 (6th Cir. 1975), *vacated in part*, 424 U.S. 961 (1976).

In order to be liable for a *Brady* violation, Stoiker must have been in possession of some exculpatory evidence which he did not disclose. Plaintiffs allege that Stoiker knew that Vernon did not witness the crime because Vernon told police that he did not know anybody in the lineup involved in the murder. However, that is not what Vernon actually said. Vernon explained that he thought the police were asking him whether he saw anyone in the lineup that had committed the crime. What the police actually asked Vernon was whether he knew anyone in the lineup and Vernon said no. Dkt. 82-11 at J6452. Vernon's personal, unspoken meaning cannot prove what Stoiker understood or knew. Furthermore, the officers knew that Vernon had previously identified the men and had led Detectives Terpay and Farmer to their houses.

Plaintiffs' other allegation of withholding exculpatory evidence is that Stoiker did not

8

disclose how the statement was prepared. However, as discussed above, there is no evidence Stoiker fabricated the statement or knew that it was fabricated. Plaintiffs cannot demonstrate by a preponderance of evidence that Stoiker had any exculpatory evidence to disclose.

Furthermore, even if Stoiker had exculpatory evidence which he did not disclose, he would be entitled to qualified immunity against the *Brady* claim. Defendant argues that evidence of an officer's wrongdoing is not exculpatory evidence, citing a recent Seventh Circuit decision, *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), in which the court held that *Brady* does not require police officers to disclose the circumstances of their investigations. However, as Plaintiffs point out, the Seventh Circuit has also recently held that police violate *Brady* when they withhold the pressure tactics employed to threaten witnesses. *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017). These cases are difficult to reconcile, but neither constitute binding precedent and neither indicate that the law was clearly established in 1975 as to whether evidence of police misconduct is exculpatory or impeachment evidence. A reasonable official would not be aware that failure to disclose a constitutional violation would itself be a second constitutional violation. Without case law clearly establishing a defendant's right to have police misconduct disclosed to him before trial, police would not be on notice of such a right. Plaintiffs have not pointed to any case law suggesting that this principle was clearly established in 1975.

Plaintiffs cannot show that Stoiker had exculpatory evidence to disclose, or that it was clearly established in 1975 that *Brady* required police officers to disclose evidence of their own misconduct. Therefore, Plaintiffs' *Brady* claims fails.

C. Malicious Prosecution

9

A person's constitutional rights are violated if they are maliciously prosecuted without probable cause. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006). To prove Stoiker liable for malicious prosecution, Plaintiffs must show that Stoiker influenced Plaintiffs' arrest or continued detention and that the influence was based on knowing misstatements or "pressure or influence" over the prosecutor or someone who testified at the initial hearing. *Sykes v. Anderson*, 625 F.3d 294, 316. Plaintiffs must also show a lack of probable cause for the prosecution. *Id.* at 308-09.

As discussed above, Plaintiffs cannot show that Stoiker made knowing misstatements. Furthermore, there is no evidence that Stoiker influenced the prosecutor or any witness. Prosecutor Del Balso interviewed Vernon and found him to be a credible witness. While Stoiker's report does indicate that he spoke to a prosecutor, the report does not have the content of that conversation and it is not a reasonable inference that Stoiker influenced the prosecutor, especially since Vernon was available to give live testimony.

Plaintiffs also cannot show a lack of probable cause. An indictment by a grand jury is sufficient to show probable cause, unless the indictment was the result of police officers knowingly presenting false evidence or testimony. *France*, 836 F.3d at 626. Plaintiffs were indicted by the grand jury and there is no evidence to suggest that Stoiker testified to the grand jury, or that his report was used to obtain the indictment. The indictment was obtained from Vernon's live testimony about witnessing the crime. While Vernon says that he was coerced into testifying that he saw the crime, Stoiker played no part in that coercion. Vernon alleges that only Detectives Terpay and Farmer compelled Vernon's live testimony. There is no evidence to suggest that Stoiker influenced Vernon's live testimony at all. Furthermore, as discussed above,

there is no evidence to suggest that Stoiker knew that Vernon's testimony was false.

Because Plaintiffs were indicted by a grand jury and because Stoiker did not testify or present knowing misstatements to the prosecution, Plaintiffs' claim of malicious prosecution fails.

### D. Plaintiffs' Remaining § 1983 Claims

There is no evidence to suggest that Stoiker committed supervisory misconduct, improperly influenced the lineup procedure, or failed to intervene. Furthermore, Plaintiffs did not argue any of these claims in their Opposition Brief. Therefore, Plaintiffs' other § 1983 claims are dismissed.

## IV. Plaintiffs' State Law Claims Are Dismissed Without Prejudice.

The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice.

## CONCLUSION

Because Plaintiffs failed to show that Stoiker fabricated evidence, or knew or should have known that other officers fabricated evidence, Defendant's Motion for Summary Judgment is GRANTED, in part.

**IT IS SO ORDERED.**

                                    **s/ Christopher A. Boyko**
                                    **CHRISTOPHER A. BOYKO**
                                    **United States District Judge**

**Dated: August 4, 2017**