UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KWAME AJAMU, et. al, | ) | CASE NO. 1:15CV1320 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, et. al, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion of the City of Cleveland for Summary Judgment (ECF DKT #65) on Plaintiffs' claims pursuant to Fed. R. Civ P. 56. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs Kwame Ajamu and Wiley Bridgeman filed their original Complaint on July 2, 2015, against Defendant City of Cleveland and several individual former detectives, alleging constitutional violations by the detectives caused by unconstitutional policies and inadequate training by the City. Plaintiffs filed their First Amended Complaint on August 10, 2016, against Defendants City of Cleveland, former Detective Jarold Englehart and Karen Lamendola, Guardian ad Litem on behalf of Frank Stoiker. On January 20, 2017, Defendant City of Cleveland filed a Motion for Summary Judgment on all claims against the City.

1

In 1975, Plaintiffs were convicted of murdering Harold Frank. Their conviction was based on the eyewitness testimony of twelve-year old Eddie Vernon. However, nearly forty years later, in 2014, Vernon recanted his testimony, claiming that he never witnessed the crime and that he had been coerced into testifying. After being released, Plaintiffs brought suit against the Investigative Officers in the Frank murder investigation and the City of Cleveland. Many of the detectives involved in the investigation were deceased by the time Plaintiffs filed their claims and the Court dismissed the claims against the deceased detectives' estates. Plaintiffs' remaining claims are against Karen Lamendola, Detective Jerold Englehart and the City of Cleveland.

The Cleveland Police Department in the 1970's had two forms of written rules: the Manual of Rules of Conduct and Discipline for Officers, Members, and Employees of the Division of Police ("Manual"), and General Police Orders ("GPOs"). Defendant cites several rules in the Manual that Defendant alleges relate to the requirement to disclose exculpatory evidence. Rule 66 requires police officers to familiarize themselves with the facts of a case, "so that all of the evidence may be properly presented to the court." Dkt. 65-1 at 4. Rule 77 requires officers to report on all matters they investigate and Rule 78 requires that all written and verbal reports be truthful and unbiased. *Id.* at 8-9. Plaintiffs cite GPO No. 19-73, which contains Rule 16 of the Ohio Rules of Criminal Procedure. Dkt. 65-7. The GPO states that the police department shall not give reports or evidence directly to defense counsel. *Id.* The Order also clarifies that the rules of criminal procedure "will be employed through the courts and through the prosecuting attorney." *Id.* The GPO does not state the obligations of the police to disclose information to the prosecuting attorney. The Cleveland Police Department's rules and policies have since been updated.

Several former detectives, along with Edward Tomba, the Deputy Chief of Homeland Security and Special Operations for the Cleveland Police Department, testified about the rules and training in place in the 1970's. All of them testified that Cleveland police officers in the 70's received both academy and on-the-job training to be police officers. Several witnesses testified that the academy trained officers to disclose exculpatory evidence, while others testified that the academy provided no such training. Several witnesses testified that they received on-the-job training to disclose exculpatory evidence to the prosecutor and no witness testified that on-the-job training did not include the duty to disclose, or that they were trained not to disclose such evidence.

Plaintiffs provided several instances of alleged police misconduct in the years leading up to their incarceration. Plaintiffs cite a 1972 memo from then-Mayor Ralph Perk, in which Perk said that police misconduct was rampant. Dkt 66-16 at 88. However, the misconduct involved was failure to respond to citizen complaints and the indictment of officers for manslaughter, armed robbery and rape. Plaintiffs also cite two alleged incidents of Cleveland police coercing witness statements through force or threat, one in 1974, and one in 1977, two years after Plaintiffs' incarceration. Former Detectives Ronald Turner and William Tell, Sr. also testified that detectives often did not follow the policy of turning over all evidence to the prosecutors.

Plaintiffs brought suit against the individual officers for violating their constitutional rights by withholding exculpatory evidence, fabricating evidence, malicious prosecution and unconstitutional lineup procedure. Plaintiffs also brought suit against the City of Cleveland under a theory of municipal liability under 42 U.S.C. §1983, alleging that Defendant's unconstitutional policies and failure to properly train officers resulted in the violation of

3

Plaintiffs' rights. Defendant moves for Summary Judgment on all claims, arguing that Plaintiffs presented no facts to show an underlying constitutional violation and arguing that the undisputed record shows that the City had adequate policies and training during the 70's. Plaintiffs argue that Defendant had an explicitly unconstitutional policy, that Defendant should have had rules instructing police officers to disclose exculpatory evidence and that Defendant failed to adequately train police officers to disclose such evidence.

## LAW AND ANALYSIS

### I. Standard of Review for Summary Judgment

Summary judgment is proper if the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Striecher*, 434 F.3d 461, 464 (6th Cir. 2006). A dispute is genuine if it is based on facts on which a reasonable jury could find for the non-moving party. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). The fact is material if the resolution of the dispute might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To meet its burden, the moving party can either present evidence showing the lack of genuine dispute as to material facts, or it may show the absence of evidence to support the nonmoving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has met its burden, the nonmoving party cannot rest on its pleadings; rather, the nonmoving party must point to specific facts in the record that show that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 248-49; *Celotex Corp.*, 477 U.S. at 324.

No matter how sympathetic one may be to Plaintiffs' plight, the Court is still under an

obligation to apply the law to the evidence Plaintiffs submit. Neither time nor death abrogates Plaintiffs' obligation to support their claims.

## II. *Monell* Claims Require an Underlying Constitutional Violation.

In order to bring a *Monell* claim against a municipality, there must be an underlying constitutional violation by one of the municipality's employees. *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001). Plaintiffs allege constitutional violations by Frank Stoiker and Jarold Englehart. However, Plaintiffs also allege that, even if the claims against the individual defendants are dismissed, Plaintiffs' *Monell* claim can still proceed as long as they can show any constitutional violation by an officer, even if that officer is not liable for that violation. In *Garner v. Memphis Police Department*, 8 F.3d 358, the Sixth Circuit held that, even though the claim against the only individual defendant had been dismissed due to qualified immunity, the *Monell* claim against the city could continue. Defendant alleges that Plaintiffs have not alleged enough facts for the Court to find there was an underlying constitutional violation.

The Court will not decide this question at this time. Regardless of whether any of the detectives involved in the Franks homicide investigation committed any constitutional violations, Plaintiffs' *Monell* claims fail as a matter of law on an independent basis discussed below.

## III. Plaintiffs' *Monell* Claims Fail as a Matter of Law.

A city or municipality may only be held liable for the constitutional violations of its own employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). There are four types of municipal action that, if they cause the underlying constitutional violation, can

establish liability under a *Monell* claim: 1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations. *France v. Lucas*, No. 1:07CV3519, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), aff'd, 836 F.3d 612 (6th Cir. 2016).

Plaintiffs, in their opposition brief, did not argue that Defendant is liable under the second or fourth theory of liability. Plaintiffs also did not present argument defending their claims for fabrication of evidence, malicious prosecution, or improper lineup procedure. As discussed above, once the party moving for Summary Judgment meets its burden of production, the non-moving part *must* present specific facts from the record that support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 324 (1986). Since Plaintiffs failed to do so, they cannot rely on the pleadings to survive Summary Judgment. It is not the Court's role to "wade through" the record to find specific facts which may support the nonmoving party's claims. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). Thus, even though the record may contain evidence to support other claims or theories, Plaintiffs have waived that argument by not raising it in their opposition brief. Furthermore, Plaintiffs have not pointed to any facts that would show that the other claims were the result of an unconstitutional policy or failure to train police officers.

    A.    <u>Defendant Did Not Have an Unconstitutional Policy to Withhold Exculpatory Evidence.</u>

Plaintiffs argue that Defendant is liable under the first method of *Monell* liability for two reasons. First, that Defendant had an explicit unconstitutional policy that forbade police officers from disclosing exculpatory evidence to defendants. Second, Plaintiffs argue that Defendant lacked an adequate policy on police officers' obligations under *Brady v. Maryland* 373 U.S. 83 (1963) and that the need for such a policy was so significant and so obvious that the lack of

policy amounts to an deliberate indifference. However, both of these arguments fail because Defendant did have official policies in place specifically requiring police officers to report on everything they investigated.

                *1.       The City Did Not Have an Explicit Unconstitutional Policy.*

Under the first method of *Monell* liability, a municipality is liable for the constitutional violations of its employees if they are executing a "policy statement, ordinance, regulation, or decision" of the city. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The occasional negligent administration of an otherwise sound policy is not enough; the policy itself must either be unconstitutional, or it must have "mandated, encouraged, or authorized" unconstitutional conduct. *Heyerman v. Cnty. of Calhoun*, 680 F3d 642, 648-49; *France*, 2012 WL 5207555, *10. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process..., irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

Plaintiffs allege that GPO 19-73 was an unconstitutional policy because it forbade police officers from disclosing evidence to defense attorneys, which violates the requirements of *Brady*. The GPO states that police officers shall not disclose records or evidence to defense counsel. This order is consistent with *Brady*. *Brady* requires prosecutors to disclose exculpatory evidence to defense counsel and requires that police officers disclose that evidence to prosecutors. *Id.*; *See also Kyles v. Whitley*, 514 U.S. 419, 437–438. The General Police Order applies, as the name suggests, to police officers, not prosecutors. The GPO states that the rules of criminal procedure are enacted through the courts and the prosecuting attorney. Dkt. 65-7. Since the

7

GPO does not forbid disclosing information to the prosecutor, this policy is not unconstitutional.[1]

Plaintiffs claim that Defendant admitted that GPO 19-73 was unconstitutional by changing the rule. This argument is meritless. First, this use of evidence is clearly inadmissible under Fed. R. Evid. 407, which prohibits evidence of subsequent remedial measures to prove culpable conduct. Even though Defendant did not raise the evidentiary objection, the Court has discretion to disregard inadmissible evidence in considering a motion for summary judgment. *Wiley v. U.S.*, 20 F.3d 222 at 226 (6th Cir. 1994); *see also Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005); *United States v. Dibble*, 429 F.2d 598, 603 (9th Cir.1970). Second, Plaintiffs cite no evidence as to the reason the rules were changed. The mere fact that police policies have changed in the forty-two years since 1975 is not evidence that the old policies were unconstitutional. Third, to allow Plaintiffs to make such an inference would be plainly against public policy. If parties could use a change of rules or policies to prove that the old policies were unconstitutional, municipalities would avoid updating their policies for fear of creating liability under *Monell* claims. Since there is a strong public interest in having municipalities improve out-of-date policies, Plaintiffs' argument fails.

    2.  *The City Was Not Deliberately Indifferent in Not Adopting Better Policies.*

Even if a municipality has not adopted an explicitly unconstitutional policy, the municipality may be liable for the failure to make a policy where one is needed. *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986). The Supreme Court held that a city's deliberate choice not to have a policy can be characterized as municipal policy. *City of Canton v. Harris*,

---

[1] Even if GPO 19-73 did forbid the prosecution from disclosing exculpatory evidence, the alleged constitutional violation in this case is the failure of police officers to disclose evidence to the prosecution, which the GPO does not forbid.

489 U.S. 378 (1989). However, it is not enough that a policy be imperfect; liability for failure to adopt a policy requires "deliberate indifference" to a "plainly obvious danger." *Armstrong v. Squadrito*, 152 F.3d 564, 578 (7th Cir. 1998). The municipality may be deliberately indifferent if there is a pattern of violations that puts the municipality on notice, or if the inadequacy of the policy in preventing constitutional violations is obvious. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 816-17 (6th Cir. 2005).

The Manual contains the rules regarding disclosure of evidence to prosecutors. Rule 77 states that "[o]fficers and members shall report on all matters referred to or investigated by them." Dkt 66-2 at 59. Rule 77 further requires all police officers to submit their reports to their superior officers. Plaintiffs contend that these reports were incomplete, but all parties agree that the reports were required to be turned over to the prosecutors. Rule 78 requires that "[w]ritten and verbal reports... shall be truthful and unbiased." *Id.* at 60. The plain language of these policies means that police officers must report truthfully and completely on everything they investigate. Therefore, the City did have a policy in place that addressed the *Brady* obligations of police officers, since turning over everything to prosecutors would naturally include exculpatory and impeachment evidence.

Plaintiffs argue that, even if Rules 77 and 78 cover disclosing evidence to prosecutors, the rules are inadequate to prevent constitutional violations because they are too vague and do not instruct police officers as to what evidence might be exculpatory. In order for Plaintiffs' argument to prevail, the policy would have to be so inadequate as to constitute deliberate indifference by the City. *Miller*, 408 F.3d at 817. This requires that either the City knew that its policy was inadequate, or that the policy was so inadequate that the danger of violation was

9

plainly obvious. *Armstrong*, 152 F.3d at 578.

Plaintiffs argue that Defendant knew that the policy was inadequate. Plaintiffs point to several reports detailing concerns with the Cleveland Police Department from the early 1970's. However, these reports concern police officers engaging in criminal activity and failing to respond to calls for assistance. These reports do not show that the City was on notice that their policy regarding disclosing exculpatory evidence was inadequate. Plaintiffs also argue that Defendant admits that the Rules were inadequate because the Rules have since been replaced. As discussed above, this argument is based on subsequent remedial measures and has no merit. Therefore, Plaintiffs have not alleged facts showing that Defendant had notice of the need for new policies.

Plaintiffs also argue that the Rules were so vague and the risk of constitutional violations so great that Defendant was deliberately indifferent to the need for better policies. Plaintiffs rely heavily on their expert witness, Donald Anders, who testified that Rule 77 could be interpreted to mean that police officers were merely required to report that they investigated a matter, without reporting on the details of what the officer learned. Dkt. 69 at 74-79. However, the requirement to report on "all matters" is not ambiguous. The plain language clearly requires police officers to turn over everything to prosecutors. Furthermore, as a police expert rather than a legal expert, Anders is not qualified to testify as to how other police officers may have interpreted the rule or as to the legal adequacy of the rule. Liability for an insufficient policy requires deliberate indifference, and where there is a written policy requiring police officers to report on all their investigations, the attempts of an expert to obfuscate the rule to show how it might be inadequate will not suffice to show deliberate indifference.

B.      Plaintiffs Cannot Show That the City's Training of Officers was Inadequate.

Plaintiffs assert that Defendant is liable under *Monell* for failing to properly train the police officers involved in the 1975 homicide investigation. However, Plaintiffs have not alleged sufficient facts to show that the on-the-job training of officers was inadequate.

A municipality may be liable under §1983 for failure to train its employees, but only where such failure reflects a deliberate or conscious choice. *City of Canton v. Harris*, 489 U.S. 378 (1989). To prevail on a claim for failure to train, a plaintiff must show: 1) the training was inadequate for the tasks officers must perform; 2) the inadequacy was the result of the city's deliberate indifference; and 3) the inadequacy was closely related to or caused the injury. *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006). There are two ways a plaintiff can show that the inadequate training was the result of deliberate indifference. First, the plaintiff can show "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005). Second, a plaintiff can demonstrate deliberate indifference even where there are no prior instances of constitutional violations "by showing that officer training failed to address the handling of exculpatory materials and that such a failure has the 'highly predictable consequence' of constitutional violations of the sort Plaintiff suffered." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006)(citation omitted).

Plaintiffs have failed to provide evidence showing that the training given to the officers was inadequate. While Plaintiffs have provided enough evidence to dispute whether the police academy covered handling exculpatory evidence, this dispute is not material. Defendant cites

11

multiple witnesses who stated that police officers received on-the-job training to disclose all evidence, including exculpatory evidence to the prosecutor and Plaintiffs have presented no evidence to suggest that on-the-job training did not include handling exculpatory evidence. This training is not insufficient merely because it is on-the-job training rather than formal academy training, because "failure-to-train liability is concerned with the substance of the training, not the particular instructional format." *Connick v. Thompson*, 563 U.S. 51, 68 (2011). Plaintiffs again rely on Anders' testimony, who stated that he believes that on-the-job training is always ineffective and therefore, the Court should infer that the officers' training in this case was inadequate. However, Anders' opinion about on-the-job training in general cannot create a genuine issue of fact where the undisputed facts on the record shows that officers received on-the-job training to disclose exculpatory evidence. Therefore, since Plaintiffs have not provided enough evidence to create a genuine issue of material fact as to whether police officers received on-the-job training to disclose exculpatory evidence, they cannot meet their burden of showing that the training was inadequate for the tasks police officers had to perform.

  Plaintiffs do point to evidence in the record in the form of testimony by former Detective Turner and Tell, that there was a widespread custom of police committing constitutional violations. This evidence does suggest that there were problems with the Cleveland Police Department in the 1970's. However, this concern falls short of supporting Plaintiffs' claims. Evidence that officers committed violations is not evidence that those officers were not trained, especially in the face of undisputed direct evidence that officers received on-the-job training to disclose all evidence. "Indeed, a law enforcement officer's choice to lie, fabricate evidence, or conceal exculpatory evidence would appear to be one that is made despite any training." *France*

12

*v. Lucas*, No. 1:07CV3519, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), *aff'd*, 836 F.3d 612 (6th Cir. 2016).

    C.    <u>Plaintiffs Cannot Show a Widespread Custom of Constitutional Violations.</u>

While Plaintiffs do not explicitly argue that Defendant is liable due to a widespread custom of constitutional violations, Plaintiffs do cite some evidence from the record that suggests the possibility of such a custom. However, this evidence falls short of supporting Plaintiffs' *Monell* claims.

In order to establish liability for a custom of tolerating constitutional violations, Plaintiffs must prove four things: 1) a persistent pattern of illegal activity; 2) notice or constructive notice on the part of Defendant; 3) Defendant's tacit approval of the unconstitutional conduct; and 4) that Defendant's custom caused the underlying constitutional violation. *France*, 2012 WL 5207555, at *12 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiffs cannot establish these elements for three reasons. First, Plaintiffs rely on the testimony of former Detectives Ronald Turner and William Tell. While both worked for the City of Cleveland Police Department during the 1970's, neither were ever a homicide detective. Turner worked in the Vice Unit and Tell worked in the Auto Theft Unit. These officers cannot speak to the policies, practices and customs of the Homicide Unit.

Second, Plaintiffs rely on Anders' expert testimony that there was a custom of constitutional violations. However, expert testimony must be based on sufficient facts to support the conclusion. Since Turner and Tell lack personal knowledge of the Homicide Unit's policies, Anders' speculation cannot create a genuine issue of material fact.

Third, even if Plaintiffs could show a widespread custom of violations, they presented no

13

evidence that Defendant had notice of this custom.  Plaintiffs point to no evidence that the Mayor or the Chief of Police were ever informed of any failures of officers to disclose exculpatory evidence to prosecutors.  Defendant had no notice or reason to be on notice that homicide detectives failed to disclose exculpatory evidence to prosecutors.

Because Plaintiffs cannot establish the existence of a widespread custom of constitutional violations in the Homicide Unit and that Defendant had notice of such a custom, Plaintiffs cannot meet their burden to prove *Monell* liability for a custom of constitutional violations.

## **CONCLUSION**

Because Plaintiffs have not shown that Defendant had an unconstitutional policy and was deliberately indifferent to the need for better policies or inadequately trained its police officers, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

        **s/ Christopher A. Boyko**
        **CHRISTOPHER A. BOYKO**
        **United States District Judge**

**Dated: August 4, 2017**